United States District Court
Southern District of Texas
**ENTERED**
November 29, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jasmine Babineaux and Yolanda Frank-Broussard, | § § § § | |
| *Plaintiffs,* | § § | Case No. 4:23-cv-01563 |
| v. | § § § | |
| Wells Fargo Bank, N.A. as Trustee for the Mastr Asset Backed Securities Trust 2007-NCW Mortgage Pass-Through Certificates Series 2007-NCW, | § § § § § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND RECOMMENDATION

This is the latest of four related suits challenging the foreclosure and subsequent sale of the same property. Several motions are pending.

Defendant Wells Fargo Bank, N.A. as Trustee for the Mastr Asset Backed Securities Trust 2007-NCW Mortgage Pass-Through Certificates Series 2007-NCW ("Wells Fargo") filed a motion to dismiss this suit as barred by res judicata and to impose a panoply of sanctions against Plaintiffs Yolanda Frank-Broussard and Jasmine Babineaux.[1] Dkt. 8. When responding to that

---

[1] Most recently, Wells Fargo filed a motion for summary judgment on its counterclaims to invalidate certain documents that Frank-Broussard filed in the real property records and enjoin Frank-Broussard from filing more such documents.

motion, Frank-Broussard embedded a challenge to this Court's jurisdiction and to the authority of Wells Fargo's counsel.  *See* Dkt. 36 at 4-6; *see also* Dkt. 10 (Frank-Broussard's "motion to show authority").  Frank-Broussard also sought leave to amend her pleading, Dkt. 49, which Wells Fargo has opposed, Dkt. 62.

After carefully considering the motions, responses, and (where pertinent) the evidence submitted at the lengthy October 13, 2023 show cause hearing, it is recommended that Wells Fargo's motion to dismiss and for sanctions (Dkt. 8)  be granted in part and denied in part.  Specifically, this suit should be dismissed with prejudice, and monetary sanctions and a pre-suit injunction should be imposed against Frank-Broussard.  But no sanctions should be imposed against co-Plaintiff Jasmine Babineaux or non-party Dykeba Frank.  It is also recommended that Frank-Broussard's challenges to jurisdiction and counsel's authority (Dkt. 10; Dkt. 36 at 4-6) be rejected. Frank-Broussard's motion for leave to amend (Dkt. 49) is denied.

At the show cause hearing, Babineaux also made an unopposed oral motion to dismiss her own claims against Wells Fargo, with prejudice.  *See* Dkt. 68 at 257-58.  It is recommended that Babineaux's motion be granted.

---

Dkt. 70.  That motion is not yet ripe and will be addressed in a separate Memorandum and Recommendation.

<u>**Background and Factual Findings**</u>

The following findings pertinent to Wells Fargo's request for sanctions are based on a preponderance of the evidence, including the record of this case and of prior cases that are matters of public record, and the testimony and documents admitted at the October 13, 2023 show cause hearing.

**A.    Frank-Broussard failed to make payments on a note that was secured by the underlying property.**

On February 22, 2007, Frank-Broussard borrowed $75,650.00 from Home123 Corporation pursuant to a promissory note. *See* Dkt. 71-1 (DX-1, Feb. 22, 2007 promissory note). The note was secured by a property at 6111 Westover Street in Houston, Texas, 77033 (the "Property"). *See* Dkt. 71-2 (DX-2, Feb. 22, 2007 deed of trust); Dkt. 57-2 (PX-2, same deed of trust). Frank-Broussard stopped making payments in late 2015. Dkt. 68 at 63-64. In the interim, the deed of trust was assigned to Wells Fargo. Dkt. 71-3 (DX-3, July 23, 2015 assignment from Mortgage Electronic Registration Systems, Inc., as nominee for Home 123 Corporation) (hereinafter "2015 Assignment").

**B.    Frank-Broussard filed a series of suits attempting to thwart foreclosure.**

In January 2016, the loan servicer, Specialized Loan Servicing LLC ("SLS"), sent Frank-Broussard a notice of default. Dkt. 71-4 (DX-4). The notice kicked off a years-long campaign by Frank-Broussard to impede foreclosure.

3

1.    <u>Frank-Broussard's serial bankruptcy filings</u>

Frank-Broussard's efforts began in the bankruptcy court.   On July 4, 2016, she filed for chapter 13 relief.   *See In re Frank-Broussard*, No. 4:16-bk-33360 (Bankr. S.D. Tex. July 4, 2016) (hereinafter *First Bankruptcy*); Dkt. 71-12 (DX-12, docket sheet); Dkt. 71-13 (DX-13, petition).   She was represented by counsel.   *See* Dkt. 71-12 at 1 (DX-12, docket sheet).

By her own admission, Frank-Broussard filed the bankruptcy petition because the Property had been posted for foreclosure sale.   *See* Dkt. 68 at 66. She later filed a motion to voluntarily dismiss the case, which was granted on July 29, 2016.   *See In re Frank-Broussard*, No. 4:16-bk-33360, Dkt. 19 (motion), Dkt. 27 (order granting motion to dismiss); *see also* Dkt. 71-14 (DX-14).

Frank-Broussard then turned around and filed a new, *pro se* bankruptcy petition on October 3, 2016.   *See In re Frank-Broussard*, 4:16-bk-34939 (Bankr. S.D. Tex. Oct. 3, 2016) (hereinafter *Second Bankruptcy*); Dkt. 71-15 (DX-15, docket sheet).   She eventually obtained counsel to represent her, but counsel withdrew.   *See Second Bankruptcy*, 4:16-bk-34939, Dkt. 71 (Feb. 15, 2017 motion to withdraw), Dkt. 74 (Feb. 16, 2017 order granting motion).   Acting *pro se*, Frank-Broussard filed a related adversary proceeding (No. 17-03138) against Wells Fargo, challenging (among other things) the foreclosure action initiated "on June 13, 2016 and August 29, 2016," asserting violations of the Federal Debt Collection Practices Act ("FDCPA"), and disputing the validity of

4

certain charges and documents. *See id.*, Dkt. 76 ¶¶ 17-20, 22-26, 28, 30, 31-32, 35 (filed Mar. 1, 2017); *see also* Dkt. 71-18 (DX-18).

On April 20, 2017, the bankruptcy court granted the chapter 13 trustee's motion to dismiss the main case. *See Second Bankruptcy*, 4:16-bk-34939, Dkt. 114. Notably, the court's order further prohibited Frank-Broussard from "refil[ing] another bankruptcy petition unless she is represented by a board-certified bankruptcy attorney." *Id.*; *see also* Dkt. 71-17 (DX-17). Dismissal of the main case also resulted in dismissal of the adversary proceeding. *See Second Bankruptcy*, 4:16-bk-34939, Dkt. 115 (April 20, 2017 order dismissing adversary proceeding); Dkt. 71-19 (DX-19).

A few months later, on September 5, 2017, Frank-Broussard filed a third bankruptcy petition, this time invoking chapter 7. *See In re Frank-Broussard*, No. 4:17-bk-35280 (Bankr. S.D. Tex. Sept. 5, 2017) (hereinafter *Third Bankruptcy*); Dkt. 71-20 (DX-20, docket sheet). The petition listed, as her counsel, Alex Acosta. Dkt. 71-21 at 7 (DX-21); *see also Third Bankruptcy*, No. 4:17-bk-35280, Dkt. 1 at 7. But Mr. Acosta informed the court that he had not agreed to represent Frank-Broussard nor prepared the petition; rather, Frank-Broussard had consulted with an attorney at Acosta Law, P.C. "to discuss possible bankruptcy options" hours *after* Frank-Broussard had filed the petition using Mr. Acosta's name. *See Third Bankruptcy*, No. 4:17-35280, Dkt. 23 ¶¶ 5, 7, 9-10. Upon reviewing the court's preclusion order in the Second

5

Bankruptcy, the attorney who met with Frank-Broussard had told her neither he nor Mr. Acosta was board-certified in bankruptcy and thus could not represent her. *See id.* ¶ 6.

After a show cause hearing, the bankruptcy court issued findings of fact and conclusions of law, concluding that Frank-Broussard had falsely used Mr. Acosta's name on her chapter 7 petition, even though no one at Mr. Acosta's firm had agreed to represent her. *Third Bankruptcy*, No. 17-bk-35280, Dkt. 48 ¶ 13 (entered March 21, 2018); *see also* Dkt. 71-22 ¶ 13 (DX-22). Notably, the court also found that Frank-Broussard had improperly filed the petition, with its false representation, to halt the foreclosure sale that was to be held later the same day. *Third Bankruptcy*, No. 17-bk-35280, Dkt. 48 ¶ 13.

The bankruptcy court granted SLS's request to terminate the automatic stay in bankruptcy and allow SLS to pursue its right to foreclose on the Property. *Id.* at 12. Separately, the court imposed $4,450 in monetary sanctions against Frank-Broussard for her "egregious misconduct" in forging Mr. Acosta's signature on the petition. *Third Bankruptcy*, No. 17-bk-35280, Dkt. 50 at 21; *see also* Dkt. 71-23 (DX-23). On March 30, 2018, the court dismissed the case. *See Third Bankruptcy*, No. 17-bk-35280, Dkt. 51 at 1; *see also* Dkt. 71-24 at 1 (DX-24).

2.  <u>Frank-Broussard's three subsequent lawsuits and yet another bankruptcy filing.</u>

After her bankruptcy strategy failed, Frank-Broussard pivoted to filing lawsuits to thwart foreclosure—first against the loan servicer, SLS, and then against Wells Fargo.  This is the fourth of those suits.

On July 2, 2018, Frank-Broussard, together with her daughter, Dykeba Frank, *see* Dkt. 68 at 93, sued SLS in Texas state court.[2]  Dkt. 71-25 (DX-25); *see also* Plaintiff's Original Petition and Application for Temporary Restraining Order & Temporary Injunction, *Frank Broussard v. Specialized Loan Servicing, LLC*, No. 2018-44213, Envelope No. 25700260 (11th Jud. Dist. Ct., Harris Cnty., Tex. July 2, 2018).  They were represented by counsel.  *See* Dkt. 71-25 at 14.  The petition alleged violations of Section 51.002(b) of the Texas Property Code, the Real Estate Settlement Procedures Act ("RESPA"), the Texas Debt Collection Practices Act ("TDCPA"), asserted claims to quiet title and for trespass to try title, and sought a temporary restraining order ("TRO") to prevent foreclosure.  *See id.* at 5-12.  The trial court issued a TRO on July 2, 2018, which expired by its terms on July 17, 2018.  *See Frank-*

---

[2] On June 5, 2017, Frank-Broussard filed in the real property records a warranty deed conveying the Property to Dykeba Frank for $10.00.  Dkt. 71-7 (DX-7).  This occurred long after the deed of trust was assigned to Wells Fargo in 2015.  Despite the date on the warranty deed (January 1, 2007), Frank-Broussard admitted that she created this deed in response to Wells Fargo's attempts to enforce its interests in the Property.  *See* Dkt. 68 at 97 (testifying that she deeded the Property to her daughter "[b]ecause you guys kept filing fraudulent deed records").

7

*Broussard*, No. 2018-44213, Envelope No. 25700260.  SLS removed the case to this Court.  *See Broussard v. Specialized Loan Servicing, LLC*, No. 4:18-cv-02415, Dkt. 1 (S.D. Tex. July 13, 2018) (hereinafter *2018 Suit*).  A few weeks later, Frank-Broussard's counsel withdrew.  *See id.*, Dkt. 11, 12.

The 2018 Suit was resolved unfavorably to Frank-Broussard.  On April 18, 2019, this Court entered an order granting SLS's motion for judgment on the pleadings.[3]  *See* Dkt. 71-26 (DX-26); *see also 2018 Suit*, No. 4:18-cv-02415, Dkt. 23.  The Court later granted default judgment to SLS on its counterclaims to invalidate two documents—both dated August 2, 2017 (No. RP-2017-348458 and No. RP-2018-248103)—filed in the real property records by Frank-Broussard and purporting to rescind the 2015 Assignment of the deed of trust to Wells Fargo.[4]  *See 2018 Suit*, No. 4:18-cv-02415, Dkt. 33 (entered September 18, 2019); *see also* Dkt. 71-27 (DX-27, default judgment); Dkt. 71-5, Dkt. 71-6 (DX-5, DX-6, rescission instruments).

After the 2018 Suit was resolved, SLS sent Frank-Broussard another notice of acceleration and posted the Property for a foreclosure sale on February 4, 2020.  *See* Dkt. 8-10 (DX-J, notice of trustee's sale); Dkt. 8-11 (DX-

---

[3] *Broussard v. Specialized Loan Servicing, LLC*, No. 4:18-cv-02415, 2019 WL 13254589 (S.D. Tex. Apr. 18, 2019) (Hittner, J.).

[4] Notably, the docket sheet in the 2018 Suit reflects that Frank-Broussard refused the Court's mailings that notified her of orders and hearings.  *See, e.g.*, *2018 Suit*, No. 4:18-cv-02415, Dkt. 19, 22, 24, 29-31, 34 (envelopes were marked "REF").  As noted *infra*, Frank-Broussard has similarly evaded service in this suit.

K, Jan. 2, 2020 notice of acceleration).  That prompted Frank-Broussard to file another suit.  *See* Dkt. 68 at 132-33.

On February 3, 2020—the day before the scheduled sale, *see* Dkt. 8-10— Frank-Broussard filed a *pro se* action against SLS in state court, asserting the same claims that were rejected in the 2018 Suit.  *Compare* Plaintiff's Original Petition and Application for Temporary Restraining Order & Temporary Injunction, *Frank v. Specialized Loan Servicing, LLC*, No. 2020-07259 (164th Jud. Dist. Ct., Harris Cnty., Tex. Feb. 3, 2020), *with 2018 Suit*, No. 4:18-cv-02415, Dkt. 23; *see also* Dkt. 71-28 at 6-10 (DX-28, 2020 petition asserting claims under Tex. Prop. Code § 51.002(d), RESPA, and TDCPA and for quiet title and trespass to try title).  Although Frank-Broussard sought a TRO, the trial court did not grant the requested relief.  Accordingly, the foreclosure sale proceeded as scheduled on February 4, 2020; as the highest bidder, Wells Fargo purchased the property.  Dkt. 71-9 (DX-9, February 12, 2020 substitute trustee's deed, recorded February 21, 2020).

SLS removed Frank-Broussard's suit to this Court, *see Frank v. Specialized Loan Servicing, LLC*, No. 4:20-cv-00476, Dkt. 1 (S.D. Tex. Feb. 12, 2020) (hereinafter *2020 Suit*).  In the 2020 Suit, this Court granted SLS's motion for judgment on the pleadings, concluding that Frank-Broussard's claims had already been resolved in the 2018 Suit and, thus, were barred by

9

res judicata.[5]  *See 2020 Suit*, No. 4:20-cv-00476, Dkt. 15 at 5-7; Dkt. 71-29 at 5-7 (DX-29).  The same day—June 24, 2020—the Court dismissed the case with prejudice.  *See 2020 Suit*, No. 4:20-CV-00476, Dkt. 16.

After the 2020 Suit ended, COVID-19 moratoriums precluded Wells Fargo from evicting Frank-Broussard (or other occupants of the Property) and taking possession of the Property.  *See* Dkt. 8 ¶ 21.  When the moratoriums expired, Wells Fargo allegedly obtained a writ of possession that was set to be served on November 8, 2021.  *See id.*

But on November 2, 2021, Frank-Broussard filed yet another *pro se* chapter 13 bankruptcy petition.  *See In re Frank-Broussard*, No. 21-bk-33598, Dkt. 1 (Bankr. S.D. Tex. Nov. 2, 2021) (hereinafter *Fourth Bankruptcy*); *see also* Dkt. 71-30 (DX-30, docket sheet); Dkt. 71-31 (DX-31, petition).  This filing violated the bankruptcy court's prior order forbidding Frank-Broussard from filing for bankruptcy unless she was represented by a board-certified bankruptcy attorney.  *See* Dkt. 71-17.  The bankruptcy court struck the petition.  *See Fourth Bankruptcy*, No. 21-bk-33598, Dkt. 28 (entered December 7, 2021); Dkt. 71-32 (DX-32).

---

[5] *Frank v. Specialized Loan Servicing, LLC*, No. 4:20-cv-00476, 2020 WL 3473716, at *3-4 (S.D. Tex. June 24, 2020) (Rosenthal, J.).

Undeterred, Frank-Broussard, together with her daughter, Dykeba[6]— and represented by counsel—filed a third state court suit on January 4, 2022, this time against Wells Fargo Bank, N.A.[7]  *See* Plaintiff's Original Petition, Application for Temporary Restraining Order and Temporary Injunction and Request for Disclosures, *Frank v. Wells Fargo Bank, N.A.*, No. 2022-00332, Envelope No. 60455740 (80th Jud. Dist. Ct., Harris Cnty., Tex. Jan. 4, 2022). The petition asserted claims under Section 51.002 of the Texas Property Code, for quiet title, and under Section 12.002 of the Texas Civil Practice and Remedies Code.  *See id.* at 5-9.

Like her prior suits, Frank-Broussard sought to invalidate the defendant's interest in the Property.  *See, e.g.*, *id.* at 6 (asserting that defendant "fraudulently prepared documents"); *id.* at 8 (alleging that defendant has no right to the Property); *id.* at 9 (alleging that defendant used or presented a fraudulent lien or claim against the Property).  Frank-Broussard immediately obtained a TRO to prevent eviction and execution of a writ of possession, *see id.*, Envelope No. 60455740 (signed Jan. 4, 2022), but the defendant removed the case to this Court, *see Frank v. Wells Fargo Bank, N.A. as Trustee for the Mastr Asset Backed Secs. Trust 2007-NCE Mortgage Pass-Through Certificates*

---

[6] Dykeba lived at the Property during this time.  *See* Dkt. 68 at 137.

[7] Wells Fargo submitted a copy of the original petition bearing the incorrect header. Dkt. 71-33 (DX-33).  Instead, the Court takes judicial notice of the petition that is available in the public records.

*Series 2007-NCW*, No. 4:22-cv-00065, Dkt. 1 (S.D. Tex. Jan. 7, 2022)
(hereinafter *2022 Suit*).  Because Frank-Broussard had sued the wrong "Wells
Fargo" entity, the Court granted a request to substitute the current Wells
Fargo entity—the trustee under the 2015 Assignment and purchaser of the
Property at the February 2020 foreclosure sale—as the proper defendant, *see
2022 Suit*, No. 4:22-cv-00065, Dkt. 7 (motion); *id.*, Dkt. 9 (order).

In the 2022 Suit, Wells Fargo filed a combined motion to dismiss and for
summary judgment.  *See id.*, Dkt. 15.  It also filed a motion for sanctions,
invoking Texas law and Rule 11 of the Federal Rules of Civil Procedure.  *See
id.*, Dkt. 23.  As sanctions, Wells Fargo sought both monetary relief and an
injunction to prohibit Frank-Broussard and Dykeba from filing future suits in
state or federal court without prior permission.  *See id.*  After these motions
were filed, the Court referred the case to the undersigned judge.  *Id.*, Dkt. 25.

In a July 21, 2023 opinion,[8] the undersigned recommended dismissing
Frank-Broussard's and Dykeba's claims under the Texas Property Code and
for quiet title because they had been raised and rejected in both the 2018 Suit
and 2020 Suit, and the close relationship between SLS, the defendant in the
prior suits who serviced the underlying mortgage, and Wells Fargo, the

---

[8] *Frank v. Wells Fargo Bank, N.A., as Trustee for the Mastr Asset Backed Secs. Trust
2007-NCW Mortgage Pass-Through Certificates Series 2007-NCW*, 2023 WL 4880785
(S.D. Tex. July 21, 2023), *adopted by* 2023 WL 5279464 (S.D. Tex. Aug. 16, 2023).

trustee, satisfied the privity requirement. *See id.*, Dkt. 26 at 8-13; *see also* Dkt. 71-34 at 8-13 (DX-34). The opinion further recommended granting summary judgment on the claim alleging that Wells Fargo violated Section 12.002 of the Texas Civil Practice and Remedies Code because the plaintiffs proffered no evidence that Wells Fargo made or used fraudulent documents to establish a lien on the Property. *See 2022 Suit*, No. 4:22-cv-00065, Dkt. 26 at 13-15.

As for sanctions, the opinion concluded that the suit was wholly groundless and filed solely to delay Wells Fargo's exercise of its rights to the Property. *See id.* at 16. Ultimately, however, the opinion recommended that the Court decline to issue a pre-suit injunction under Fed. R. Civ. P. 11 and Texas rules and impose monetary sanctions instead. *See id.* at 23.

This Court adopted the recommendation, dismissed all claims against Wells Fargo, and awarded Wells Fargo $14,789.66 in reasonable attorneys' fees and costs as sanctions against Frank-Broussard and Dykeba. *See 2022 Suit*, No. 4:22-cv-00065, Dkt. 29 at 1-2 (entered August 16, 2023); *see also* Dkt. 71-35 (DX-35). Final judgment dismissing the case with prejudice was entered on August 29, 2023. *See 2022 Suit*, No. 4:22-cv-00065, Dkt. 30.

**C.   Frank-Broussard, joined by her niece, filed this fourth suit raising the same claims that had already been rejected.**

   1.   Wells Fargo moved to dismiss the suit and requested that Plaintiffs be sanctioned.

To short-circuit the proceedings in the 2022 Suit, Frank-Broussard turned around—this time joined by her niece, Jasmine Babineaux (together, "Plaintiffs"), *see* Dkt. 68 at 93-94—and filed the current suit in state court, styled as an "Emergency Petition" and request for TRO. *See* Plaintiff's Emergency Petition and Application for Temporary Restraining Order and Temporary Injunction, *Babineaux v. Wells Fargo Bank, N.A., as Trustee for the Mastr Asset Backed Secs. Trust 2007-NCW Mortgage Pass-Through Certificates Series 2007-NCW*, No. 2023-24436, Envelope No. 74781620 (270th Jud. Dist. Ct., Harris Cnty., Tex. Apr. 18, 2023); *see also* Dkt. 71-36 (DX-36). Notably, Plaintiffs filed this suit just before an eviction trial was to begin on April 20, 2023. *See* Dkt. 8 ¶ 24. The trial court issued an *ex parte* TRO that stopped the trial. *See* TRO, *Babineaux*, No. 2023-24436, Envelope No. 74781620 (signed April 20, 2023).

Like the prior suits, this latest suit asserts claims for fraudulent liens under Texas Civil Practice and Remedies Code (i.e., Section 12.002), violations

of the TDCPA, and trespass to try title.[9]  *See id.* at 4-5.  Also like the prior suits, the latest allegations dispute the validity of Wells Fargo's interests.  *See id.* at 5-8.  Wells Fargo removed the case to this Court based on diversity jurisdiction.  *See* Dkt. 1 ¶¶ 8-11 (invoking 28 U.S.C. § 1332).

Wells Fargo then filed a motion to dismiss the claims and to impose sanctions.  Dkt. 8.  In substance, Wells Fargo's motion argued that Plaintiffs' suit is barred because it raises the same claims this Court rejected in the prior suits.  *See id.* ¶ 25 (asserting claim preclusion).  Invoking both Rule 11 of the Federal Rules of Civil Procedure and Section 11.054 of the Texas Civil Practice and Remedies Code, Wells Fargo further requested that Frank-Broussard, Babineaux, and non-party Dykeba be classified as vexatious litigants.  *Id.* ¶¶ 26, 29, 35.  As relief, Wells Fargo asked the Court to (a) dismiss all claims; (b) order all three individuals to pay Wells Fargo's reasonable attorneys' fees and costs; and (c) enjoin all three individuals from filing any new cases, whether in federal or state court, without prior permission of a judge in the court where they intend to file.  *Id.* ¶¶ 36-41, 43.

---

[9] According to the petition, Babineaux had purchased the Property from Dykeba on November 7, 2022 "free and clear of all liens."  Dkt. 71-36 at 3 (DX-36).  But the attached general warranty deed explicitly states that the conveyance is "subject to all ... encumbrances ... relating to the Property filed for record in Harris County, Texas."  *Id.*, Ex. B; *see also* Dkt. 71-11 (DX-11).

2.   <u>Plaintiffs did not respond or appear at the first sanctions hearing.</u>

Plaintiffs did not respond to Wells Fargo's motion to dismiss their claims and impose sanctions.  Although Wells Fargo properly served the motion by sending it via first-class mail, *see* Fed. R. Civ. P. 5(b)(2)(C), Frank-Broussard refused delivery.  *See* Dkt. 9.  Indeed, she consistently did so with respect to all filings—even those sent by the Court, *see, e.g.*, Dkt. 11, 12, 24—despite confirming that the filings were sent to the correct address, Dkt. 68 at 7-8. Frank-Broussard admitted she intentionally refused Wells Fargo's mailings. Dkt. 68 at 120 (admitting "absolutely" that she refused those mailings). Babineaux also admitted that she avoided service because Frank-Broussard told her "not to open" the mailings.  *Id.* at 227.  The Court finds no valid justification for these refusals.

In the interim, Frank-Broussard filed a "Sworn Motion for Attorney to Show Authority Texas Rule of Civil Procedure, Rule 12." Dkt. 10.  The motion argued that Wells Fargo's counsel should not be allowed to defend their client and that Wells Fargo is not a cognizable entity.  *See id.* at 6-7.

3.   <u>Hearings and filings leading up to the show cause hearing.</u>

Wells Fargo's request for a pre-suit injunction, as sanctions, prompted the undersigned to set a hearing for August 28, 2023.  *See* Dkt. 16 at 2 (August

22, 2023 order).  Because Frank-Broussard had returned the Court's mailings, the order directed the U.S. Marshals to effectuate in-person service.  *See id.*

Both Frank-Broussard and Babineaux evaded service by refusing to meet with the Deputy Marshal—although the Marshal informed them about the impending hearing.  *See* Dkt. 19 & 20.  In the interim, and at the Court's request, *see* Dkt. 16 at 2, Wells Fargo filed a brief with additional authority supporting the imposition of a pre-suit injunction that would preclude Plaintiffs from filing further suits without the court's permission, Dkt. 21.

Plaintiffs failed to appear at the August 28, 2023 hearing.  As belt-and-suspenders, however, the Court then issued another show cause order, this time directing Plaintiffs to present written submissions explaining "why they should not be barred from filing, whether in state or federal court, any further lawsuits concerning the foreclosure of the underlying property."  Dkt. 26 at 2.  The order stated that Plaintiffs could request another hearing but set a deadline for doing so.  *Id.*  As a precautionary measure, the order directed the U.S. Marshals to serve the show cause order on Plaintiffs.  *Id.* at 2-3.

Ultimately, Deputy U.S. Marshal William Simon served Frank-Broussard with the show cause order.  *See* Dkt. 48; Dkt. 68 at 214.  Service on Babineaux, however, was not successful.  Babineaux evaded service, either by agreeing to meet with Deputy Simon but failing to follow through, or by refusing to respond to his calls and voice messages.  *See* Dkt. 68 at 219-25.

17

Each call from Deputy Simon to Babineaux precipitated complaints from Frank-Broussard, *see id.* at 217-19, 221-23, who asserted that Babineaux was "not involved" or that Deputy Simon "had a vendetta," *id.* at 218, 222.

Frank-Broussard responded to the show cause order and requested a hearing.  Dkt. 36.  The filing globally asserted, in conclusory fashion, that the proceedings are unlawful and that the filings by Wells Fargo's counsel are fraudulent and invalid.  *Id.* ¶¶ 2, 4.  Frank-Broussard *even objected to her own* "documents, accusations, etc." that were submitted in this case.  *Id.* ¶ 5.  And Frank-Broussard accused Wells Fargo's counsel, without any articulated basis, of sending "harmful US Mail and/or infected electronic files" and copies of documents that were not "true and correct" and "forg[ing] Judges and Clerks [sic] signatures on alleged Judgements and Court Orders ...."  *Id.* ¶¶ 3, 6.  The filing alleges that Wells Fargo's counsel lacks authority and is engaged in wrongdoing "in concert with Harris County Assistant County Attorneys," *id.* ¶¶ 11-13, 18, and that there is no jurisdiction because the Wells Fargo entity in this case "does not exist" or "has no standing" to foreclose, *id.* ¶¶ 9-10, 21.

Frank-Broussard also attached an affidavit lodging a litany of complaints against numerous attorneys and judges, asserting—again, in conclusory fashion—that everyone was part of a "conspiracy of fraud" related to the Property.  *See* Dkt. 37 at 2-3.  Separately, Frank-Broussard filed a request for TRO and preliminary injunction.  Dkt. 38.

The Court then issued an order setting a combined evidentiary hearing and show cause hearing, for October 13, 2023, to resolve both the sanctions issue and Frank-Broussard's request for TRO. Dkt. 39. Nonetheless, Frank-Broussard filed a second motion for TRO and preliminary injunction, this one styled as an emergency. Dkt. 40. The undersigned promptly issued a Memorandum and Recommendation to deny Frank-Broussard's requested relief. Dkt. 41 at 2, 13. The opinion concludes, in key part, that her claims are barred by claim preclusion, *i.e.*, res judicata. *See id.* at 8-11. Plaintiffs did not file objections to the recommendations.

### 4.   The October 13, 2023 show cause hearing

Because the Memorandum and Recommendation had already addressed Frank-Broussard's request for TRO and injunctive relief, the sole remaining issue for the October 13, 2023 hearing was whether Frank-Broussard, Babineaux, or both should be classified as vexatious litigants and sanctioned as a result. Frank-Broussard appeared at the hearing. Babineaux initially failed to appear but showed up partway through the proceeding.

***Frank-Broussard's testimony.*** Frank-Broussard's testimony reinforced Wells Fargo's position that she has abused and will continue to abuse the judicial system to impair Wells Fargo's rights to dispose of the Property. Indeed, Frank-Broussard candidly admitted she "[p]robably" will file

19

yet more suits against Wells Fargo—and perhaps others—concerning the Property. *See* Dkt. 68 at 171.

Moreover, Frank-Broussard's purported justifications for her conduct merely attempted to relitigate the merits of the prior suits that were resolved against her. *See, e.g.*, *id.* 87-88 (attempting to challenge finding, in the Third Bankruptcy, that she filed a fraudulent petition); *id.* at 103 (disputing validity of the 2015 Assignment to Wells Fargo); *id.* at 119 (asserting Wells Fargo "ha[s] no right" to the Property); *id.* at 131-32 (asserting documents supporting foreclosure were "fraudulent"); *id.* at 149 (disputing the Court's ruling that the 2022 Suit was frivolous); *id.* at 157 (denying that prior suits challenging foreclosure were resolved against her); *id.* at 179 (asserting Wells Fargo's "deed or whatever was fraudulent deed records");  *id.* at 196 (disputing that she filed a fraudulent petition in the Third Bankruptcy).

She accused all her prior attorneys and opposing counsel of wrongdoing. *See id.* at 65 (First Bankruptcy); *id.* at 80-81 (alleging she filed the adversary proceeding related to the Second Bankruptcy "[a]t the improper advice of hostile attorneys"); *id.* at 85 (accusing various attorneys of trying to frame her for "forgery and perjury or whatever"); *id.* at 128 (alleging her attorney in the 2018 Suit was "compromised" by Wells Fargo's attorneys); *id.* at 146, 154, 172 (alleging her counsel in the 2022 Suit had engaged in a "conspiracy of fraud" and was "dirty").  And she denied filing or improperly challenged documents

that she plainly filed.  *See, e.g.*, *id.* at 37 (alleging her Fourth Bankruptcy filing, DX-31, was "a conspiracy of fraud"); *id.* at 84-85 (asserting her own filing in the Third Bankruptcy, DX-20, was "fraudulent"); *id.* at 129 (asserting her petition in the 2020 Suit, DX-28, was a "[f]raudulent record").  Along similar lines, Frank-Broussard insisted that documents taken straight out of public records were fraudulent or inauthentic.  *See, e.g.*, *id.* at 129 (alleging that her petition in the 2018 Suit, DX-28, was a "[f]raudulent record").

In fact, Frank-Broussard characterized as "fraud" or "forged" every document or action that did not favor her position, whether they were court records or property records.[10]  *See, e.g.*, *id.* at 82 (accusing bankruptcy judge of being "involved in a conspiracy of fraud"); *id.* at 89 (asserting that bankruptcy judge's finding that she falsely used Alex Acosta's signature was "fraud"); *id.* at 112 (alleging that the original note and deed of trust, DX-1 and DX-2, were "[f]raudulent documents"); *id.* at 127-28 (asserting the Court's default judgment against her in the 2018 Suit, DX-27, was "fraud"); *id.* at 134, 157 (asserting that Feb. 4, 2020 substitute trustee's deed was "fraudulent"); *id.* at 135-36 (asserting that the Court's opinion rejecting her claims in the 2020 Suit, DX-29 was "forged"); *id.* at 136-37 (claiming that public records reflecting that

---

[10] Wells Fargo properly authenticated copies of the promissory note, deed of trust, the 2015 Assignment, the notice of default, and the substitute trustee's deed.  Dkt. 61 (business records affidavit).

the 2018 Suit and 2020 Suit were resolved against her were "fraudulent documents"); *id.* at 151-52 (alleging that the petition in this suit, pulled from the public record, DX-36 was not "true and correct").

Put simply, Frank-Broussard's denials and her multifarious allegations of wrongdoing were not credible.  None of them was substantiated by the affidavit or exhibits she submitted.   To the contrary, Frank-Broussard's affidavit is just as conclusory as her bare assertions of fraud and forgery during the hearing.  *See* Dkt. 57 at 1-12.  And many of the exhibits she submitted address prior lawsuits or property tax disputes that have no bearing on this case.  *See* Dkt. 57-1, 57-3, 57-4, 57-5, 57-6, 57-7, 57-8, 57-9, 57-10, 57-11, 57-12 (PX-1, PX-3 through PX-12).   Stray communications and notices regarding prior bankruptcy proceedings are equally irrelevant.  *See* Dkt. 57-13, 15-14, 57-15, 57-16 (PX-13 through PX-16).  The remaining exhibits merely include the deed of trust, Dkt. 57-2 (PX-2), and several notices to vacate the Property issued on November 2, 2021, January 25, 2022, and December 1, 2022, Dkt. 57-18, 57-19, 57-20 (PX-18 through PX-20).  But her challenges to the validity of those instruments and the foreclosure process were rejected in her three prior lawsuits.  *See supra*, Background, Part B.2.

Frank-Broussard's accusations against Wells Fargo's counsel similarly lack credibility.  There is no basis for accusing counsel of committing fraud or any other wrongdoing.   *See* Dkt. 68 at 21 (alleging that counsel filed

"fraudulent and bad faith evictions"); *id.* at 32-33 (alleging her attorney in the 2018 Suit was "compromised" by Wells Fargo's counsel); *id.* at 154 (alleging that counsel "compromised" her attorney in the 2022 Suit); *id.* at 172 (claiming "you guys are in a conspiracy fraud").   The Court also rejects Frank-Broussard's baseless assertion that counsel sent her "tainted" mail or damaged her computer by sending her harmful files.   *See id.* at 11 (unsubstantiated allegation that "they sent me tainted, harmful mail"); *id.* at 120 (asserting that counsel had "destroyed" her electronics).    Instead,   Frank-Broussard intentionally and unjustifiably refused filings properly served by mail.  *See id.* at 120-21 (admitting she refused mail from Wells Fargo's counsel); *see also, e.g.*, Dkt. 28 (Frank-Broussard's notation "Harmful Mail!!! No Mail!!" on mailing from counsel).

Relatedly, Frank-Broussard had no valid basis for repeatedly and intentionally refusing to accept delivery of filings sent by the Court.  *See, e.g.*, Dkt. 11, 12, 24.  The Court rejects Frank-Broussard's claimed ignorance of these proceedings as a delay tactic.  *See* Dkt. 68 at 148.  Regardless, Frank-Broussard's manufactured assertion that she failed to receive filings is moot, given that the Court gave her copies of every filing in the case when the show cause hearing began.  *See id.* at 8, 107-08.

The Court also finds Frank-Broussard's assertions that she needs to hire an attorney constitute an improper attempt to delay.  *See* Dkt. 68 at 10-11; *id.*

at 12, 20, 37, 49, 88, 92.  Frank-Broussard chose to file this suit, pro se, when she filed it seven months ago.  Since that time, she has had ample opportunity to retain counsel, if she truly wished to do so.  Weeks have now passed since the show cause hearing, with no indication that she has taken steps to obtain an attorney.  Frank-Broussard's failure to act does not warrant deferring a ruling on Wells Fargo's long-pending motion to dismiss and for sanctions.

***Babineaux's testimony.***   The Court finds credible Babineaux's testimony that she was drawn into this suit by her aunt, Frank-Broussard, in whom she misplaced her trust.[11]  Until the Deputy U.S. Marshal contacted her to arrange personal service of Court orders, Babineaux had not realized she was a named plaintiff in this suit; she had signed papers that Frank-Broussard asked her to sign, without reading them.  *See* Dkt. 68 at 230-32.  Although Wells Fargo's counsel subsequently called her, from Babineaux's perspective, he was just "a random guy" with whom she did not wish to speak.  *See id.* at 240.   Given her close relationship with her aunt, she believed Frank-Broussard's assertions and did not follow-up on counsel's allegations.  *See id.* at 240 (Babineaux took Frank-Broussard at her word); *id.* at 241 (Babineaux did not investigate, look into the issues, or read what was filed).

---

[11] At the hearing, Frank-Broussard asserted that she took "full responsibility" for filing this suit.  Dkt. 68 at 236.

In addition, Babineaux orally moved to dismiss her claims against Wells Fargo, with prejudice.  *See* Dkt. 68 at 257-58.  Although the undersigned stated that her request would be granted, *see id.* at 258, a subsequent order clarified that her dismissal required a ruling from the presiding district judge, Dkt. 58 at 1 n.1.  On the record, however, the Court had warned Babineaux that any such dismissal would not affect Wells Fargo's request for sanctions against her for participating in a frivolous suit.  Dkt. 68 at 259.  At the Court's request, *see* Dkt. 58 at 2, Wells Fargo also indicated that it would not dismiss its counterclaims against Babineaux, Dkt. 63.

## Analysis

### I. Jurisdiction is proper.

Because some of Frank-Broussard's filings embed challenges to this Court's subject-matter jurisdiction, that is where the analysis begins.  In response to the show cause order, Frank-Broussard argued that this case was improperly "transfer[red]" from state court.  Dkt. 36 at 3.  That is incorrect. Federal law authorized Wells Fargo to remove this suit to federal court because Plaintiffs are domiciled in Texas, Wells Fargo is a national banking association and citizen of South Dakota, and the amount in controversy exceeds $75,000. *See* Dkt. 1 ¶¶ 8-17; 28 U.S.C. §§ 1332, 1441(a), 1446.  Plaintiffs have submitted no evidence contradicting the jurisdictional facts.

Frank-Broussard's further contention that Wells Fargo "does not exist" is wholly unsubstantiated and does not affect this Court's jurisdiction, in any event. To the contrary, her own petition named this Wells Fargo entity as the defendant. *See* Dkt. 2 at 6 (DX-1, state court petition). That entity is the same name as the entity who acquired the deed of trust from Home 123 Corporation pursuant to the 2015 Assignment. *See* Dkt. 71-3 (DX-3). Whether couched as a jurisdictional challenge or otherwise, Frank-Broussard's challenge to Wells Fargo's existence should be rejected.

## II.    <u>Frank-Broussard's "motion to show authority" is meritless.</u>

Frank-Broussard's related challenge to the authority of Wells Fargo's counsel is flawed. *See* Dkt. 10; Dkt. 36 at 4-5. She invokes Rule 12 of the Texas Rules of Civil Procedure, which does not apply in federal court. Dkt. 10; *see T.R. Hoover Cmty. Dev. Corp. v. City of Dallas*, 2008 WL 2604818, at *2 n.2 (N.D. Tex. July 2, 2008) (rejecting similar challenge because "this Texas procedural rule is inapplicable"). Even if that rule applied, the record reflects that counsel has filed pleadings on Wells Fargo's behalf, complying with the signature requirements of Federal Rule of Civil Procedure 11. Counsel does not "need to demonstrate any additional authority to represent their clients." *See Wirsche v. Bank of Am., N.A.*, 2013 WL 6564657, at *2 (S.D. Tex. Dec. 13, 2013). In any event, Frank-Broussard's assertions hinge on the baseless

contention that the *client*, Wells Fargo, does not exist.  *See supra* Part I (rejecting this contention).  Her motion to show authority should be denied.

## III.  <u>Plaintiffs' claims are barred by claim preclusion.</u>

Wells Fargo's threshold request for dismissal of this suit is a foregone conclusion, given this Court's *three* prior dismissals of Frank-Broussard's suits challenging Wells Fargo's and its mortgage servicer's exercise of rights to foreclose on the Property.  Plaintiffs' identical claims here are barred.

"Claim preclusion, or res judicata, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Stevens v. St. Tammany Parish Gov't*, 17 F.4th 563, 570 (5th Cir. 2021).  A subsequent suit is barred if: (1) the parties are the same "or at least [are] in privity with" the parties in a prior action; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior action concluded with a final judgment on the merits; and (4) the prior and current action involve the same claim or cause action.  *See United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994).  This rule "prevents a later suit ... from collaterally attacking a prior judgment by a court of competent jurisdiction."  *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009).  "The res judicata effect of a prior judgment is a question of law ...." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

For the first requirement, the parties are identical to—or are at least in privity with—the parties in the 2018 Suit, 2020 Suit, and 2022 Suit. Frank-Broussard was a plaintiff in all three prior suits. *See Broussard*, 2019 WL 13254589, at *1; *Frank*, 2020 WL 3473716, at *1; *Frank*, 2023 WL 4880785, at *1. Babineaux, although newly added here, allegedly acquired the Property from Dykeba Frank. *See* Dkt. 2 at 23 (DX-2 at 3). Dykeba, in turn, was a plaintiff in both the 2018 Suit and the 2022 Suit and allegedly purchased the Property from Frank-Broussard. *See Broussard*, 2019 WL 13254589, at *1; *Frank*, 2023 WL 4880785, at *1. Babineaux's claimed status as the successive owner of the Property makes her a party in privity with those prior plaintiffs. *See Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990) ("For res judicata purposes ... privity exists ... where the non-party is the successor in interest to a party's interest in property.").

In addition, Wells Fargo has a pre-existing relationship with the mortgage servicer that Frank-Broussard sued in the 2018 Suit and 2020 Suit. *See Frank*, 2023 WL 4880785, at *5 (Wells Fargo, as assignee of the deed of trust, is in privity with the mortgage servicer, SLS); *see also, e.g., Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("[N]onparty preclusion may be justified based on a variety of pre-existing substantive legal relationship[s] between the person to be bound and a party to the judgment.") (internal quotation marks omitted). Wells Fargo was also the defendant in the 2022 Suit. *See Frank*,

28

2023 WL 4880785, at *1.  These facts confirm that Wells Fargo was the same party or in privity with the defendant in the prior suits.

The second and third requirements for claim preclusion are also met. This Court entered final judgments on the merits in all three prior suits.  *See 2018 Suit*, No. 4:18-cv-02415, Dkt. 33 (S.D. Tex. Sept. 18, 2019); *2020 Suit*, 4:20-cv-00476, Dkt. 16 (S.D. Tex. June 24, 2020); *2022 Suit*, 4:22-cv-00065, Dkt. 30 (S.D. Tex. Aug. 29, 2023).  The Court had jurisdiction to enter each of those judgments, either based on federal question jurisdiction, 28 U.S.C. § 1331, or diversity jurisdiction, *id.* § 1332.[12]

The last requirement for claim preclusion hinges on a "transactional test" that examines whether the prior and current actions "were based on the same nucleus of operative facts."  *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 171 (5th Cir. 1992) (internal quotation marks omitted).  Here, Plaintiffs assert state-law claims for trespass to try title, violation of the Texas Civil Practice and Remedies Code by using fraudulent documents to establish a lien

---

[12] *See* Notice of Removal, *2018 Suit*, No. 4:18-cv-02415, Dkt. 1 at 2 (invoking federal question jurisdiction based on Real Estate Settlement Practices Act claim and supplemental jurisdiction over other state-law claims, 28 U.S.C. §§ 1331, 1367); *Frank*, 2020 WL 3473716, at *1-2 (*2020 Suit*, denying plaintiff's motion to remand upon finding that federal question jurisdiction exists and exercising supplemental jurisdiction over state-law claims); Notice of Removal, *2022 Suit*, No. 4:22-cv-00065, Dkt. 1 at 3-4 (invoking diversity jurisdiction under 28 U.S.C. § 1332 because plaintiffs were domiciled in Texas and Wells Fargo, as a national banking institution, is a citizen of South Dakota, the location of its main office, and the value of plaintiffs' declaratory relief claim exceeded $75,000).

on the Property (governed by Section 12.002), and fraudulent and abusive collection tactics under the Texas Debt Collection Practices Act ("TDCA"). *See* Dkt. 2 at 9-11 (DX-1). The subject and substance of these claims are identical to those in the prior suits. *See Broussard*, 2019 WL 13254589, at *3-4 (dismissing trespass to try title and TDCA claims); *Frank*, 2020 WL 3473716, at *4 (dismissing trespass to try title and TDCA claims as barred by claim preclusion); *Frank*, 2023 WL 4880785, at *5-6 (granting summary judgment on claims under Tex. Civ. Prac. & Rem. Code Ann. § 12.002).

The record therefore confirms that all requirements for claim preclusion are met. All of Frank-Broussard's and Babineaux's claims should be dismissed.

## IV. **Frank Broussard's request for leave to amend is denied as futile.**

Frank-Broussard's request for leave to inject yet more allegations is denied. Generally, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). But a court can properly deny leave to amend "where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Whether amendment would be futile hinges on "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (internal quotation marks omitted).

Under Rule 12(b)(6), conclusory allegations do not suffice, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)—even by pro se plaintiffs, *see Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("[P]ro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level."). And allegations of fraud must be pleaded with particularity—an even stricter standard. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (for fraud claims, a plaintiff must set forth "the particulars of the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby") (internal quotation marks omitted).

The proposed amendment mirrors Frank-Broussard's allegations that this Court has already considered and rejected in connection with the October 13, 2023 show cause hearing. *See supra* Background, Part C.4. For instance, Frank-Broussard asserts that she failed to receive notice of filings, *see* Dkt. 49 ¶¶ 1.1-1.5, yet she has only herself to blame for refusing service of process—including of orders sent by the Court to her record address, *see* Dkt. 68 at 7-8 (confirming her address was correct); *id.* at 121 (Frank-Broussard's refusal of mail from Wells Fargo's counsel). The record also negates her allegations that any filings are inauthentic or that any signatures of judges or clerks were "forged." And Frank-Broussard's requests for a hearing and copies of the filings are moot in light of the hours-long show cause hearing where she

received those filings.  *Compare* Dkt. 49 ¶¶ 1.6, 2.6, *with* Dkt. 68 at 8 (providing Frank-Broussard copies of all filings at the show cause hearing).   Frank-Broussard cannot raise allegations that have already been resolved against her.  In any event, the conclusory nature of her allegations renders them futile. *See Iqbal*, 556 U.S. at 678.

Equally futile are Frank-Broussard's attempts to relitigate—for the fourth time—both the validity of Wells Fargo's interests in the Property and her prior bankruptcy cases that were dismissed.  *See, e.g.*, Dkt. 57 at 6-9 (attempting to challenge validity of prior bankruptcy proceedings); *id.* at 10-11 (asserting that counsel conspired with her former attorneys to "unlawfully seize[]" her Property).  Her generalized allegations that various attorneys involved in prior property tax disputes, bankruptcy proceedings, and federal and state-court suits committed fraud alongside state and federal judges come nowhere close to meeting basic pleading standards.  *Compare, e.g.*, *id.* at 3-12, *with Iqbal*, 556 U.S. at 678 ("conclusory statements" cannot survive dismissal).

Frank-Broussard's allegations against Wells Fargo's counsel are just as deficient, replete with bare assertions that counsel committed fraud.  *See, e.g.*, Dkt. 49 ¶ 1.7 (alleging that counsel "forge[d] Judges and Clerks signatures" on documents and orders); *id.* ¶ 2.3 (alleging that counsel or their client "compromised" the paralegal service that filed Frank-Broussard's state-court

pleadings); *id.* ¶ 2.5 (asserting that counsel and Wells Fargo engaged in "an elaborate conspiracy of fraud").

In addition, Wells Fargo correctly asserts that Frank-Broussard's allegations about its counsel's conduct are barred by attorney immunity. *See* Dkt. 62 at 4-5. Under Texas law, attorney immunity is a "comprehensive affirmative defense protecting attorneys from liability to non-clients, stemming from the broad declaration ... that attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages." *Cantey Hanger LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (internal quotation marks omitted). Simply labeling counsel's conduct as fraudulent does not negate attorney immunity. *See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 348 (5th Cir. 2016) (no categorical "fraud exception" to attorney immunity); *see also Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 657 (Tex. 2020) (merely asserting that attorney's conduct was "criminal" does not overcome immunity). "Dismissal based on the attorney immunity defense is proper when the scope of the attorney's representation—and thus entitlement to the immunity—[i]s apparent on the face of the complaint." *Burke v. Ocwen Loan Servicing, L.L.C.*, 855 F. App'x 180, 186 (5th Cir. 2021) (internal quotation marks omitted).

Frank-Broussard's allegations target counsel's conduct during litigation, including while serving documents in this case, *see* Dkt. 49 ¶¶ 1.3, 1.7, seeking to vindicate Wells Fargo's rights, *see id.* ¶ 2.5, and obtaining a writ of possession on Wells Fargo's behalf, *see* Dkt. 57 at 12. This conduct falls squarely within the scope of counsel's representation of his client. *Cf. Gipson v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 11515582, at *5 (N.D. Tex. Dec. 18, 2014) ("Representing a mortgagee by initiating foreclosure proceedings and filing a foreclosure action against a defaulting homeowner clearly falls within the scope of an attorney's duties in representing his client.").

Frank-Broussard articulates no plausible basis for overcoming the immunity barrier. Counsel is therefore immune from her proposed claims. *See, e.g.*, *Burke*, 855 F. App'x at 186-87 (affirming dismissal of allegations against an attorney in a foreclosure case); *Iqbal v. Bank of Am., N.A.*, 559 F. App'x 363, 364-65 (5th Cir. 2014) (attorneys retained to assist foreclosure were immune from homeowners' challenge to conduct within scope of representation). For this additional reason, Frank-Broussard's proposed amendment is denied as futile.

## V.   **Frank-Broussard's repeated filing of baseless suits warrants a pre-suit injunction and monetary sanctions.**

Wells Fargo's request for sanctions against Plaintiffs includes both a plea for monetary sanctions consisting of its reasonable attorneys' fees and

costs and for injunctive relief to bar Plaintiffs from filing further suits in state or federal court without prior court permission.  *See* Dkt. 8 ¶¶ 35-40, 43; Dkt. 21.  Wells Fargo further seeks sanctions against Dykeba Frank, who is not a party to this case.  *See* Dkt. 8 ¶¶ 35-41, 43.  Based on the evidence at the show cause hearing, Wells Fargo is entitled to monetary sanctions and more tailored injunctive relief—but only against Frank-Broussard.

## A. Frank Broussard qualifies as a vexatious litigant who should be enjoined.

### 1. The All Writs Act authorizes pre-suit injunctions against vexatious litigants.

A threshold question is what framework governs the sanctions request.  Although invoked by Wells Fargo, Federal Rule of Civil Procedure 11 does not apply for two reasons.  First, this case was filed in state court, not federal court.  *See* Dkt. 1 (notice of removal).  Second, Wells Fargo failed to comply with procedural requirements for obtaining relief under Rule 11.  *See* Fed. R. Civ. P. 11(c)(2) (prohibiting the filing of Rule 11 motion unless it was first served on the opposing party, who then has 21 days to withdraw the challenged filing); *see also Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (reversing imposition of Rule 11 sanctions because the movant failed to comply with the safe harbor provision in Fed. R. Civ. P. 11(c)(2)).

Alternatively, Wells Fargo invoked Texas Civil Practice and Remedies Code § 11.054.  That provision authorizes courts to issue an injunction to bar

a plaintiff from filing new suits without prior permission from an administrator of the court where the plaintiff wishes to file.   But the requirements under Section 11.054 are very specific.   *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.054.  And this Court previously declined to rely on Section 11.054 to impose a pre-suit injunction.   *See 2022 Suit*, No. 4:22-cv-00065, Dkt. 29 (entered Aug. 16, 2023).

Nonetheless, there is another avenue for the relief.  As noted in Wells Fargo's supplemental brief, Dkt. 21 at 6-7, the All Writs Act authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."   28 U.S.C. § 1651(a).  This Act permits federal courts "to enjoin litigants who are abusing the court system by harassing their opponents."   *See Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980) (per curiam).

"[I]t is widely accepted that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions without permission from the court." *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002).  The propriety of such a pre-suit injunction depends on several factors:

> (1) the party's history of litigation, in particular whether [s]he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and

other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008) (quoting

*Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)).[13]   In

addition, a pre-suit injunction "should be tailored to protect the courts and to

preserve the litigant's legitimate right to present nonfrivolous claims." *Staten*

*v. Harrison Cnty.*, 2021 WL 5766576, at *3 (5th Cir. Dec. 3, 2021) (per curiam).

2.   <u>Frank-Broussard's filing of multiple baseless suits concerning the Property warrants a pre-suit injunction.</u>

Frank-Broussard's litigation history leaves no doubt that she qualifies

as a vexatious litigant who has abused the judicial system.   Worse, Frank-

Broussard has signaled that she will continue to do so.   *See* Dkt. 68 at 171.

This Court should enjoin her—and any person acting at her behest—from filing

future suits concerning the Property, whether in federal or state court, and

whether against Wells Fargo or any person or entity in privity with Wells

Fargo, without obtaining that court's prior permission.

---

[13] Although *Baum* vacated the portion of a pre-suit injunction that applied to state-court filings, the court limited that result to the specific facts.   *See* 513 F.3d at 192 & n.3 (expressing "no opinion" on "whether a district court's pre-filing injunction may extend to state court or state agency filings in other factual circumstances"). Moreover, to the extent that *Baum* conflicts with *Newby's* authorization of pre-suit injunctions that extend to state courts under other circumstances, the prior decision in *Newby* controls.   *See Seong Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d 748, 756-57 (S.D. Tex. 2019) (applying rule of orderliness to conclude a Fifth Circuit panel decision that conflicted with a prior panel's decision "is of no effect") (citing, *inter alia*, *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999); *Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 196 n.4 (5th Cir. 2000)).

First, Frank-Broussard has repeatedly and improperly utilized judicial proceedings to thwart the lender's attempt to foreclose.  Despite making no payments on the promissory note since 2015, *see* Dkt. 68 at 63-64, Frank-Broussard filed serial bankruptcy petitions between January 2016 and September 5, 2017, each time to stop foreclosure.  She even resorted to falsely putting an attorney's name on her Third Bankruptcy filing to circumvent the bankruptcy court's order barring her from filing new petitions without representation from a board-certified bankruptcy lawyer.  *See Third Bankruptcy*, No. 17-bk-35280, Dkt. 50 at 15 (entered March 30, 2018).

The pattern continued for several more years when Frank-Broussard changed her tactics and resorted to filing suits in state court.  All three prior suits attempted to challenge the loan servicer and Wells Fargo's rights to foreclose upon and sell the Property.  *See supra* Background, Part B.2 (discussing the 2018 Suit, the 2020 Suit, and the 2022 Suit).  All of them were removed to this Court.  Every time, this Court rejected her claims.

Frank-Broussard filed the first of her suits on July 2, 2018.  *See* Plaintiff's Original Petition and Application for Temporary Restraining Order & Temporary Injunction, *Frank Broussard v. Specialized Loan Servicing, LLC*, No. 2018-44213, Envelope No. 25700260 (11th Jud. Dist. Ct., Harris Cnty., Tex. July 2, 2018).  This Court dismissed the claims on the merits.  *See 2018 Suit*, No. 4:18-cv-02415, Dkt. 23; *Broussard, LLC*, 2019 WL 13254589, at *1-4.

But just one day before a scheduled foreclosure sale, Frank-Broussard filed the 2020 Suit, asserting the same claims that had been dismissed in the 2018 Suit. *Compare* Plaintiff's Original Petition and Application for Temporary Restraining Order & Temporary Injunction, *Frank v. Specialized Loan Servicing, LLC*, No. 2020-07259 (164th Jud. Dist. Ct., Harris Cnty., Tex. Feb. 3, 2020), *with 2018 Suit*, No. 4:18-cv-02415, Dkt. 23. The 2020 Suit was dismissed as barred by res judicata. *See 2020 Suit*, No. 4:20-cv-00476, Dkt. 15 at 5-7; *Frank*, 2020 WL 3473716, at *3-4.

Frank-Broussard nonetheless filed the same claims again, this time against Wells Fargo. *See* Plaintiff's Original Petition, Application for Temporary Restraining Order and Temporary Injunction and Request for Disclosures, *Frank v. Wells Fargo Bank, N.A.*, No. 2022-00332, Envelope No. 60455740 (80th Jud. Dist. Ct., Harris Cnty., Tex. Jan. 4, 2022). Just like the 2020 Suit, the 2022 Suit was dismissed on res judicata grounds. *See 2022 Suit*, 4:22-cv-00065, Dkt. 26 at 8-13; *id.*, Dkt. 29 (adopting Dkt. 26); *Frank*, 2023 WL 4880785, at *4-6. Moreover, this Court found that the 2022 Suit was frivolous, *see Frank*, 2023 WL 4880785, at *7, and imposed $14,789.66 in monetary sanctions against her for filing it, *see 2022 Suit*, 4:22-cv-00065, Dkt. 29.

Before the Court had resolved the 2022 Suit, Frank-Broussard filed this latest suit. Plaintiff's Emergency Petition and Application for Temporary Restraining Order and Temporary Injunction, *Babineaux v. Wells Fargo Bank,*

*N.A., as Trustee for the Mastr Asset Backed Secs. Trust 2007-NCW Mortgage Pass-Through Certificates Series 2007-NCW*, No. 2023-24436, Envelope No. 74781620 (270th Jud. Dist. Ct., Harris Cnty., Tex. Apr. 18, 2023).  She did so for the improper purpose of halting an impending state-court eviction trial.  *See Babineaux*, No. 2023-24436, Envelope No. 74781620 (TRO signed April 20, 2023).  But the allegations are indistinguishable from those already rejected in the 2018 Suit, 2020 Suit, and the 2022 Suit.  *See supra* Part III.  Like those prior suits, Frank-Broussard filed this action for the improper purpose of thwarting the foreclosure and eviction process.

Second, Frank-Broussard had no good faith basis for repeatedly lodging the same challenges to Wells Fargo's or its loan servicer's rights to foreclose upon and sell the Property.  Claim preclusion principles barred her from refiling the same claims, whether against SLS, Wells Fargo, or any entity that held or may later hold the deed of trust.  *See supra* Part III.  Frank-Broussard's refusal to accept that result does not make her latest suit any less frivolous.  And her weaponization of court procedures to block the foreclosure process reflects that she has acted in bad faith.

Third, Frank-Broussard's attempts to relitigate the same claims multiple times has improperly and unnecessarily burdened other parties and this Court.  The loan servicer, SLS, had to defend against the claims twice.  Its

privy, Wells Fargo, has also had to litigate the claims twice. And every time, the Court has had to evaluate those claims—all with the same result.

Most recently, Frank-Broussard's misconduct necessitated a day-long show cause hearing. Beyond that, the Court has spent considerable time reviewing many filings and preparing multiple orders and opinions in this case. Frank-Broussard's deliberate avoidance of service also consumed more court resources effectuating in-person service by the U.S. Marshal. These resources have been wasted on a suit that should not have been filed.

For the last factor, alternative sanctions would not adequately deter Frank-Broussard's contumacious conduct. Monetary sanctions—though certainly merited, *see infra* Part V.A.3, and previously imposed in the 2022 Suit—are likely toothless because Frank-Broussard appears to lack the financial resources to pay them. Indeed, the bankruptcy court imposed monetary sanctions against her. *See Third Bankruptcy*, No. 4:17-bk-35280, Dkt. 50 at 21 (entered Mar. 30, 2018). Yet it was that court's preclusive order— not the monetary sanctions—that prevented Frank-Broussard from pursuing another bankruptcy proceeding. *See Fourth Bankruptcy*, No. 21-bk-33598, Dkt. 28 (Dec. 7, 2021 order striking petition). This result indicates that the only adequate remedy is a pre-suit injunction.

The remaining question concerns the scope of the injunction. Wells Fargo maintains that it should extend to *any* federal or state suit that Frank-

Broussard may file. *See* Dkt. 8 ¶ 38. This is overbroad because it contains no subject-matter restriction. *See, e.g.*, *Staten*, 2021 WL 5766576, at *3 (requiring pre-suit injunctions to be tailored "to preserve the litigant's legitimate right to present nonfrivolous claims"). Because Frank-Broussard's frivolous filings all concern the rights to this specific Property, a pre-suit injunction must be limited to that topic.

As for the courts where the injunction should apply, Frank-Broussard's conduct confirms the necessity of extending it to Texas state court suits that concern the Property. Indeed, Frank-Broussard filed all four of her suits in state court, obtaining multiple temporary restraining orders that impaired the foreclosure process. Only later was the defendant able to remove the case to this Court and, after expending more resources, eventually obtain dismissal. Thus, the only adequate means of deterring further abuses is to ensure the injunction applies both to federal and state courts in Texas. Frank-Broussard also should be required to obtain permission from the relevant court to file any new suit over the Property and to provide that court a copy of this Court's injunction order when seeking such permission.

The remaining issue concerns the parties to which the injunction should apply. On the plaintiff side, Frank-Broussard has used other family members—her daughter, Dykeba, and then her niece, Babineaux—as part of her scheme to delay the Property's sale. Therefore, the injunction should apply

42

not only to Frank-Broussard herself, but to any person acting in concert with her or on her behalf.  On the defense side, Frank-Broussard has threatened to pursue yet more suits against persons and entities related to Wells Fargo or those from whom Wells Fargo acquired the deed of trust.

This vicious cycle must end.  To ensure that result, the pre-suit injunction against Frank-Broussard, and anyone act with her or on her behalf, must extend to all Texas courts and protect not only Wells Fargo and SLS, but all entities and individuals in privity with them, including their attorneys.

3.   <u>Monetary sanctions are also merited against Frank-Broussard</u>

The same reasons for imposing monetary sanctions against Frank Broussard in the 2022 Suit likewise justify monetary sanctions against her in this case.  Because this case began in Texas state court, Texas law authorizes this Court to impose sanctions against Frank-Broussard for filing a frivolous action to harass or cause unnecessary delay.  *See DTND Sierra Invs., L.L.C. v. HSBC Bank USA, N.A.*, 627 F. App'x 285, 287-88 (5th Cir. 2015) (per curiam) (affirming sanctions under chapter 10 of the Texas Civil Practice and Remedies Code for "aspects of a case that occurred in state court prior to removal to federal court") (internal quotation marks omitted); Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–10.004.  "Violations of Section 10.001 may result in a penalty 'sufficient to deter repetition of the conduct' including expenses incurred as a

result of the violation, attorneys' fees, and a penalty to be paid to the court." *DTND Sierra Invs.*, 627 F. App'x at 287-88 (quoting Tex. Civ. Prac. & Rem. Code § 10.004).

As concluded in the 2022 Suit and detailed above, Frank-Broussard filed this baseless suit for the improper purpose of attempting to forestall the foreclosure and sale of the Property.  Monetary sanctions are warranted both as a deterrent, *see* Tex. Civ. Prac. & Rem. Code § 10.004(b), and to compensate Wells Fargo for expenses incurred while defending a suit that should not have been filed, *see id.* § 10.004(c)(3) (authorizing "an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees").

Although Wells Fargo submitted an affidavit detailing a portion of the relevant attorneys' fees and costs, its submission did not include the expenses associated with the full-day show cause hearing.  *See* Dkt. 71-37 at 3-4.  Rather than address the quantum of monetary sanctions piecemeal, the most efficient course is to await entry of final judgment and resolve the total compensable attorneys' fees and costs at that time.

4.    <u>Sanctions against Babineaux and Dykeba Frank are unwarranted.</u>

The evidence at the show cause hearing confirms that sanctions against Frank-Broussard's niece and fellow plaintiff, Babineaux, are not warranted.

Babineaux was not the driver behind this suit—that was Frank-Broussard alone. Frank-Broussard manipulated Babineaux into signing the original petition, which Babineaux did not read because she misplaced her trust in Frank-Broussard. *See* Dkt. 68 at 230-33. Indeed, Babineaux did not sign any pleading other than the original petition. *Compare* Dkt. 2 at 17 (original petition with both parties' signatures), *with* Dkt. 36 at 7 (Frank-Broussard's signature only), *and* Dkt. 37 at 7-8 (same), *and* Dkt. 38 at 9 (same), *and* Dkt. 40 at 9 (same). Moreover, Babineaux was not involved in the 2018 Suit, 2020 Suit, or 2022 Suit, much less Frank-Broussard's bankruptcy proceedings. The facts do not support classifying Babineaux as a vexatious litigant under federal or state law. Given her lack of culpability, the Court finds no basis for imposing sanctions against her.

Even less tenable is Wells Fargo's request for sanctions against Dykeba Frank. *See* Dkt. 8 ¶¶ 35-41, 43. Dykeba is not a party to this suit. The Court cannot sanction Dykeba for filing or pursuing a case that she neither filed nor pursued.

**VI.**   **Babineaux's request to dismiss her claims is proper.**

On the record at the October 23, 2023 hearing, Babineaux moved to dismiss her claims against Wells Fargo. *See* Dkt. 68 at 257-58. In her words, "I don't want to be involved. I will not sue nothing. I'm just completely done." *Id.* at 257. She further stated that her dismissal would be with prejudice,

confirming her understanding that she would no longer be allowed to file these claims against Wells Fargo.  *See id.* at 258.  Wells Fargo stated that it was unopposed to Babineaux's request.[14]  *See* Dkt. 63.  This Court should grant Babineaux's motion to dismiss her claims, with prejudice.

## Recommendation and Order

For the foregoing reasons, it is **RECOMMENDED** that Defendant Wells Fargo's combined motion to dismiss and for sanctions (Dkt. 8) be **GRANTED IN PART and DENIED IN PART**, as follows:

(1)   Plaintiffs Yolanda Frank-Broussard and Jasmine Babineaux's claims should be **DISMISSED WITH PREJUDICE**;

(2)   Frank-Broussard, as well as any persons acting on her behalf or in concert with her, should be **ENJOINED** from filing, in any state or federal court in Texas, any further lawsuits concerning the property at 6111 Westover Street in Houston, Texas, 77033, against Wells Fargo, its mortgage servicer Specialized Loan Servicing, LLC ("SLS"), their attorneys, or any party in privity with Wells Fargo or SLS, unless Frank-Broussard <u>first</u> obtains permission from the court where she wishes to file the suit.  When seeking that permission, Frank-Broussard <u>must</u>

---

[14] In a subsequent filing, and at the Court's request, Wells Fargo clarified that it was not dismissing its pending counterclaims against Babineaux.  *See* Dkt. 63 ¶ 3.  This is because Babineaux's name is on certain filings in the real property records that Wells Fargo maintains have clouded its title to the Property.  *See id.* ¶¶ 3-4.

provide a copy of this Memorandum and Recommendation and any subsequent order adopting it;

(3)     Wells Fargo's further request for monetary sanctions against Frank-Broussard, consisting of reasonable attorneys' fees and costs expended defending against this frivolous suit, should be **GRANTED** in an amount to be determined after entry of final judgment; and

(4)     Wells Fargo's requests for sanctions against Babineaux and non-party Dykeba Frank should be **DENIED**.

It is further **RECOMMENDED** that (a) Frank-Broussard's motion challenging the authority of Wells Fargo's counsel (Dkt. 10; *see also* Dkt. 36 at 4-5) be **DENIED**; and (b) Babineaux's oral motion to dismiss, with prejudice, her claims against Wells Fargo (Dkt. 68 at 257-58) be **GRANTED**.

In addition, it is **ORDERED** that Frank-Broussard's motion for leave to amend (Dkt. 49) is **DENIED**.

For clarity, Wells Fargo's counterclaims against Frank-Broussard and Babineaux, Dkt. 60, remain pending, along with its motion for summary judgment on some of those counterclaims, Dkt. 70.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for**

plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825

(5th Cir. 2015).

      Signed on November 29, 2023, at Houston, Texas.

_____

Yvonne Y. Ho

United States Magistrate Judge
